# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
MERDENA MONTGOMERY,            *
                               *     No. 15-1037V
         Petitioner,           *     Special Master Christian J. Moran
                               *
v.                             *     Filed: April 29, 2020
                               *
SECRETARY OF HEALTH            *     Attorneys' Fees and Costs
AND HUMAN SERVICES,            *
                               *
         Respondent.           *
* * * * * * * * * * * * * * * * * * * *

<u>Michael G. McLaren</u>, Black McLaren, et al., Memphis, TN, for Petitioner;
<u>Robert P. Coleman, III</u>, United States Dep't of Justice, Washington, DC, for Respondent.

### PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

Pending before the Court is petitioner Merdena Montgomery's motion for final attorneys' fees and costs. She is awarded **$145,642.42**.

\*   \*   \*

On September 17, 2015, petitioner filed for compensation under the Nation Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 through 34. Petitioner alleged that the tetanus-diphtheria-acellular pertussis and human

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

papillomavirus vaccines she received on January 28, 2013, caused her to suffer Guillain-Barré syndrome. Petition at 1. Petitioner filed multiple expert reports from Dr. Lawrence Steinman, and respondent filed multiple reports from Drs. Lindsay Whitton and Peter Donofrio. After the parties submitted briefs, an entitlement hearing was held in Washington, DC on May 14-15, 2019, where testimony was heard from petitioner and the aforementioned experts. At the close of evidence, the undersigned issued a bench decision denying compensation for petitioner. The undersigned then issued a published decision denying compensation on May 21, 2019. 2019 WL 2511352.

On July 8, 2019, petitioner filed a motion for final attorneys' fees and costs ("Fees App."). Petitioner requests attorneys' fees of $147,369.20 and attorneys' costs of $38,935.73 for a total request of $186,304.93. Fees App. at 1.[2] Pursuant to General Order No. 9, petitioner warrants that she has not personally incurred any costs related to the prosecution of her case. On July 22, 2019, respondent filed a response to petitioner's motion. Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Response at 1. Respondent adds, however that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id at 2. Additionally, he recommends "that the Court exercise its discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3. Petitioner did not file a reply thereafter.

\* \* \*

Although compensation was denied, petitioners who bring their petitions in good faith and who have a reasonable basis for their petitions may be awarded attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). In this case, the undersigned has no reason to doubt the good faith of the claim, and although the claim was ultimately unsuccessful, the matter necessitated an entitlement hearing and the undersigned finds that petitioner's claim has a reasonable basis throughout the entire case. Respondent also has not challenged the reasonable basis of the claim. A final award of attorneys' fees and costs is therefore proper in this case.

---

[2] Petitioner originally sought attorneys' costs of $37,584.29. On August 6, 2019, petitioner filed a supplemental motion indicating that two invoices had inadvertently been excluded from petitioner's original motion and revising the amount of requested costs to $38,935.73.

2

The Vaccine Act permits an award of reasonable attorney's fees and costs. §15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018)

A.   Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work was done outside of the District of Columbia.

Petitioner requests the following rates of compensation for the work of her attorneys:

|  | **2015** | **2016** | **2017** | **2018** | **2019** |
| --- | --- | --- | --- | --- | --- |
| Michael McLaren | $410 | $425 | $440 | $456 | $473 |
| William Cochran | $345 | $355 | $365 | $377 | $391 |
| Chris Webb | $295 | $305 | $315 | $326 | $338 |

| Law Clerks | $145 | $145 | $148 | $153 | $158 |
| --- | --- | --- | --- | --- | --- |
| Paralegals | $135 | $140 | $145 | $150 | $155 |

The undersigned has previously analyzed whether Black McLaren, et al. attorneys and staff should receive forum rates or local rates for their Vaccine Program work and concluded that based upon a wide range of data, the difference between a reasonable forum rate and a reasonable local rate was substantially different, and that counsel therefore should receive local rates. E.S. By and Through Sweatt v. Sec'y of Health & Human Servs., No. 15-1222V, 2017 WL 2417770, at *7 (Fed. Cl. Spec. Mstr. May 12, 2017). The undersigned is cognizant that at the time Sweatt was issued, special masters differed as to whether Black McLaren attorneys and staff should receive local and forum rates, and since the time of that decision, most special masters have awarded forum rates for work performed in Memphis, Tennessee. However, these other decisions do not establish binding precedent. Hanlon v. Sec'y of Health & Human Servs., 40 Fed. CL. 625, 630 (1998). Since that time, the undersigned has also awarded local rates to Black McLaren, et al. attorneys in Ferguson v. Sec'y of Health & Human Servs., No 16-939V, 2018 WL 3989457 (Fed. Cl. Spec. Mstr. Jul. 12, 2018). The decisions to award local rates in Sweatt and Ferguson were not appealed, and petitioner in the instant case has not provided any argument in her motion for attorneys' fees and costs suggesting that Sweatt was wrongly decided, nor has she provided any new data concerning appropriate rates in the past three years which might allow the undersigned to now reach a contrary decision.

The remaining issue is to establish appropriate local rates for the instant case. The rates established in Sweatt and Ferguson provide an appropriate starting point – Mr. McLaren was awarded $320.00 per hour for his work in 2015 and $326.00 per hour for his work in 2016, Mr. Cochran was awarded $272.00 per hour for 2015 and $277.00 per hour for 2016, and paralegal work was compensated at $105.00 per hour for 2015 and $107.00 per hour for 2016. 2017 WL 2417770, at *8. Upon consideration of all relevant factors, the undersigned finds the following rates of compensation reasonable in subsequent years: for Mr. McLaren, $337.00 per hour for work performed in 2017, $350.00 per hour for work performed in 2018, and $375.00 per hour for work performed in 2019; for Mr. Cochran, $286.00 per hour for work performed in 2017, $296.00 per hour for work performed in 2018, and $319.00 per hour for work performed in 2019. Reasonable rates for paralegal work are $111.00 per hour for work performed in 2017, $115.00 per hour for work performed in 2018, and $120.00 per hour for work performed in 2019.

The undersigned next turns to establishing a reasonable rate for the work of Mr. Webb. As the undersigned noted in Sweatt when establishing a reasonable rate for Mr. Cochran, a reasonable rate based upon the data was 85 percent of Mr. McLaren's rate in a given year. Id. at *7. This is also confirmed by the rates sought by petitioner in the instant motion. Similarly, Mr. Webb's rate appears to generally be approximately 85 percent of Mr. Cochran's rate. Accordingly, the undersigned shall award the following rates for Mr. Webb's work: $231.00 per hour for work performed in 2015, $235.00 per hour for work performed in 2016, $242.00 per hour for work performed in 2017, $253.00 per hour for work performed in 2018, and $271.00 per hour for work performed in 2019.

Finally, the undersigned shall turn to a reasonable rate for law clerk work. The rates requested for law clerks range from $3.00 to $10.00 greater than that of paralegals. Upon review of the billing records, it is not readily apparent why an increased amount should be awarded for law clerk work as opposed to paralegal work. Only a very small number of hours billed are attributable to paralegals (3.5 in total) versus law clerk work (64.6 in total) and the billings records reflect that law clerks performed tasks which are traditionally performed by paralegals at other firms, such as requesting medical records, updating calendars, and preparing *pro forma* filings. In practice, law clerks at Black McLaren, et al. fulfill a virtually identical role as paralegals at other firms do. The fact that only $3.00 separates the requested paralegal and law clerk rates in 2017-2019 further underscores that the firm itself does not view the tasks performed by law clerks to require significant expertise over what is required of paralegals. The undersigned shall therefore apply the previously established paralegal rates to all law clerk work in the instant case.

Overall, the awarded rates for the instant case are as follows:

|  | **2015** | **2016** | **2017** | **2018** | **2019** |
|---|---|---|---|---|---|
| Michael McLaren | $320 | $326 | $337 | $350 | $375 |
| William Cochran | $272 | $277 | $286 | $296 | $319 |
| Chris Webb | $231 | $235 | $242 | $253 | $271 |
| Law Clerks &Paralegals | $105 | $107 | $111 | $115 | $120 |

Application of these rates results in a reduction of **$31,482.60**.[3]

  B.  Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

Upon review of the submitted billing records, the undersigned notes that the billed hours are largely reasonable, but several minor issues necessitate a small overall reduction. First, paralegals routinely billed for administrative tasks, such as scanning, faxing, mailing, and filing documents. Second, many routine court filings were reviewed by two or sometimes three individuals, leading to excessive

---

[3] Reductions for Mr. McLaren:

2015: ($410 requested - $320 awarded) * 3.5 hours = $315.00; 2016: ($425 requested - $326 awarded) * 3.1 hours = $306.90; 2017: ($440 requested - $337 awarded) * 4.9 hours = $504.70; 2018: ($456 requested - $350 awarded) * 3.5 hours = $371.00; 2019: ($473 requested - $375 awarded) * 59.9 hours = $5,870.20.

Reductions for Mr. Cochran:

2015: ($345 requested - $272 awarded) * 0.2 hours = $14.60; 2016: ($355 requested - $277 awarded) * 0.6 hours = $46.80; 2017: ($365 requested - $286 awarded) * 0.9 hours = $71.10; 2019: ($391 requested - $319 awarded) * 3.5 hours = $252.00.

Reductions for Mr. Webb:

2015: ($295 requested - $231 awarded) * 55.9 hours = $3,577.60; 2016: ($305 requested - $235 awarded) * 32.2 = $2,254.00; 2017: ($315 requested - $242 awarded) * 41.0 hours = $2,993.00; 2018: ($326 requested - $253 awarded) * 35.5 hours = $2,591.50; 2019: ($338 requested - $271 awarded) * 145.6 hours = $9,755.20.

Reductions for Law Clerks:

2016: ($145 - $107) * 26.8 hours = $1,018.40; 2017: ($148 - $111) * 8.6 hours = $318.20; 2018: ($153 - $115) * 11.4 hours = $433.20; 2019: ($158 - $120) * 17.8 = $676.40.

Reductions for Paralegals:

2015: ($135 - $105) * 1.9 hours = $57.00; 2017: ($145 - $111) * 0.2 hours = $6.80; 2019: ($155 - $120) * 1.4 hours = $49.00.

time billed overall for their review (e.g., two attorneys and a paralegal reviewing a scheduling order on 10/2/15, an order granting a time extension on 10/20/15, a scheduling order on 11/30/15, a scheduling order on 6/1/17).[4] There are also some erroneous or otherwise non-reimbursable entries, such as blank entries on 7/6/15 and 2/23/17, some duplicative entries such as Mr. McLaren billing to review the initial order on two different days approximately a week apart, and half an hour on 10/12/15 to "Research information on Robert Paul Coleman, III", respondent's counsel.

There are also issues with Mr. Webb's billed travel time. On his trip to meet with petitioner in Kentucky, Mr. Webb billed his full hourly rate on time spent driving to the meeting, when there was no possibility of performing other case related work. Mr. Webb also billed his full hourly rate for time spent traveling to and from Washington, DC for the entitlement hearing, but does not assert any case work was being performed during this time (Mr. McLaren, on the other hand, correctly billed only half the time spent traveling).

In sum, the undersigned has reviewed the billing records and finds that five percent reduction to the billed hours is warranted. This results in a reduction of $5,794.33.[5] Petitioner is therefore awarded final attorneys' fees of **$110,092.27**.

C.     Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  Petitioner requests a total of $38,935.73 in attorneys' costs. The majority of this amount ($25,147.53) is attributable to work of petitioner's expert, Dr. Lawrence Steinman, and costs incurred by Dr. Steinman to travel to Washington, DC to testify in the entitlement hearing. Dr. Steinman billed a total of 47.25 hours at $500.00 per hour for review of medical records, preparation of two expert reports, review of respondent's expert reports, and time spent participating in the entitlement hearing. Although Dr. Steinman's billing entries do not contain the specificity typically desired by the undersigned, the total number of hours billed is reasonable for the amount work performed.

---

[4] These are merely examples and are not meant to be an exhaustive list of all such duplicative or excessive entries.

[5] ($147,369.20 requested - $31,482.60 reduction of rates) * 0.05 = $5,794.33.

Petitioner's remaining costs are for the Court's filing fee, transcript costs, and travel costs incurred by counsel related to visiting petitioner in Kentucky at the beginning of the case and the entitlement hearing. Upon review, the undersigned has found several reductions which must be made related to travel by counsel.

First, there are a small amount of costs which have not been supported with documentation, typically for meals (e.g., $7.00 on 10/11/15 for "Lunch at airport" and $5.43 on 10/12/15 for "Lunch"). The sum of all such missing costs is $62.87.

More concerning is counsel's consistently excessive expenditures on travel. The undersigned shall address these issues in turn. First, Mr. Webb billed $871.70 to fly first class to meet with petitioner. Fees App. Ex. 2 at 58. Mr. Webb attempts to justify this by showing a different coach itinerary for a direct flight priced at $880.70. Id. at 60. In essence, petitioner is arguing that Mr. Webb's less convenient first-class flight (which involved a layover in Atlanta) is reasonable because a more convenient coach flight at slightly greater expense was also available.

This argument is unavailing. First, one curated data point concerning one coach flight does not mean that a first-class flight is reasonable, because that one data point does nothing to establish whether other less expensive coach options available. This is especially so in the airfare market, where ticket prices are notoriously subject to wide fluctuations based upon what day or time an individual chose to research ticket prices. Furthermore, the undersigned notes that a less convenient itinerary means more hours billed for travel. Mr. Webb's travel time for flights and layover was approximately 6.5 hours. The proposed direct flight was approximately 3.5 hours. The difference in travel time billed by Mr. Webb due to choosing a less convenient first-class flight must be considered when assessing the reasonableness of counsel's conduct. Based on the evidence submitted, the undersigned finds this first-class travel unreasonable.

Next, Mr. Webb billed $933.00 for a first-class flight to Washington, DC for the entitlement hearing. Fees App. Ex. 2 at 65. Again, Mr. Webb justifies this expense by pointing out several coach flight at more convenient times which are more expensive than his first-class flight. Again, Mr. Webb's list of flights is not definitive proof that his chosen flight was reasonable or even representative of all available options. The undersigned also notes that Mr. Webb's flight was purchased on May 1, 2019, approximately two weeks before the entitlement hearing was to begin. The entitlement hearing had been scheduled since October 19, 2018. There are several compelling reasons as to why counsel would not make travel plans immediately - counsel may be engaged in settlement discussions and

may anticipate that a hearing will not ultimately occur, or through working up the case, counsel may reasonably believe that a two day scheduled hearing could conclude after only one day and allow counsel to return home earlier than anticipated. However, there was ample time to research and consider travel plans from when the order was filed to the date counsel actually purchased his airfare, which could have yielded more reasonable airfare rates. In sum, petitioner has failed to show that this first-class flight was reasonable.

Mr. McLaren also booked first-class airfare to attend the entitlement hearing in the amount of $1,011.60. Id. at 87. Mr. McLaren booked this travel four days before he was scheduled to leave, and unlike Mr. Webb, has made no attempt at providing additional data points which might cast his expenditure in a more reasonable light. This expense is unreasonable on its face.

Finally, counsel booked first-class airfare on behalf of petitioner to attend the entitlement hearing in the amount of $1,149.00. Id. at 80. Counsel contends that this was reasonable because a comparable coach flight was only $119.00 less and that petitioner would then have to incur additional costs for checked baggage, making the first-class flight a better value. Id. Again, counsel has provided merely one data point from one airline as proof that this first-class airfare was reasonable. However, one cherry-picked price does not definitively establish that first-class airfare was reasonable in the instant case.

The undersigned notes that the attorneys at Black McLaren et al. have been admonished numerous times concerning this exact issue. See Lepper v. Sec'y of Health & Human Servs., No. 18-984V, 2019 WL 7580152, at *3 (Fed. Cl. Spec. Mstr. Dec. 12, 2019); Digerolamo v. Sec'y of Health & Human Servs., No. 16-920V, 2019 WL 4305792 (Fed. Cl. Spec. Mstr. Jun. 28, 2019); Hiatt v. Sec'y of Health & Human Servs., No. 16-1467V, 2019 WL 4305795, at *3 (Fed. Cl. Spec. Mstr. Jun. 28, 2019); Wright v. Sec'y of Health & Human Servs., No. 12-423V, 2018 WL 7017749, at *5 (Fed. Cl. Spec. Mstr. Dec. 10, 2018). As has been done in the past, the undersigned shall only reimburse these airfare expenses at 50% of what has been billed. This results in a reduction of $1,982.35.[6]

The amount attributable to lodging is also excessive in the undersigned's experience. Mr. Webb stayed three nights at the W Hotel, a luxury hotel in

---

[6] As the cases cited above illustrate, the attorneys at Black McLaren, et al. have received ample warning that first class airfare is not appropriately billed to the Vaccine Program. Although the undersigned is awarding one-half of the requested amount for the instant case, future requests for first class airfare will be denied in toto.

9

downtown Washington, DC. The first night was $377.10, the second and third nights were $529.00 (exclusive of occupancy and tourism taxes). Mr. McLaren also stayed at the W Hotel. His room was $254.00 for the first night, $616.00 for the second night, and $714.00 for the third night exclusive of taxes. Petitioner stayed at the JW Marriott, also a luxury hotel in downtown Washington, DC, at a rate of $597.00 for the first night, $548.00 for the second night, and $499.00 for the third night exclusive of taxes. Although hotel lodging, like airfare, is subject to wide fluctuations in price based on how early the lodging is booked and the time of year, the undersigned has previously noted that given the wide array of lodging options near the Office of Special Masters, hotel costs exceeding $400.00 per night are likely unreasonable without any supporting evidence to justify their reasonableness. See Pickens v. Sec'y of Health & Human Servs., No. 17-187V, 2019 WL 5260367, at *5 (Fed. Cl. Spec. Mstr. Sept. 20, 2019). As no supporting evidence of reasonableness was provided, the undersigned shall compensate the excessive nights at $400.00, resulting in a reduction of $1,232.00.

Finally, the undersigned notes the generally excessive amount expended on food by counsel, particularly Mr. McLaren, who expended over $100.00 per day on dining at various upscale restaurants in Washington, DC. This is far from the first time that Black McLaren et al. attorneys have been cautioned for excessive dining charges. See Middleton v. Sec'y of Health & Human Servs., No. 17-1910V, 2020 WL 748696 (Fed. Cl. Spec. Mstr. Jan. 6, 2020); Weir v. Sec'y of Health & Human Servs., No. 15-1491V, 2018 WL 5095156 (Fed. Cl. Spec. Mstr. Sept. 11, 2018); Reichert v. Sec'y of Health & Human Servs., No. 16-697V, 2018 WL 3989429 (Fed. Cl. Spec. Mstr. Jun. 20, 2018); Dempsey v. Sec'y of Health & Human Servs., No. 04-394V, 2017 WL 6343870 (Fed. Cl. Spec. Mstr. Nov. 16, 2017).

Typically, in these cases, the excessive meal charges have been reduced to a per diem rate for the given locale. It is clear, however, that this approach has done little to convince counsel to engage in more appropriate billing judgment when it comes to dining choices. This is not surprising because it presents counsel with a no-lose situation. If counsel bills for excessively expensive meals, the best-case scenario (from counsel's perspective) is that the Court (now burdened with the responsibility of being the sole arbiter of the reasonableness of such requests given Respondent's almost complete lack of participation in resolving motions for attorneys' fees and costs) overlooks these costs and pays them. The worst-case scenario has been a reduction to per diem. In short, there is no reason for counsel to change their behavior because the only penalty is bringing the charges in line with what "should have been." With that in mind, the undersigned will not

reimburse these excessive meal charges, and counsel is cautioned that in the future, excessive expenditures on food will be disallowed fully rather than merely reduced. Accordingly, $171.23 is reduced from the final award of costs.

In sum, petitioner is awarded attorneys' costs of $35,550.15.

### E. Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I award a total of **$145,642.42** (representing $110,092.27 in attorneys' fees and $35,550.15 in attorneys' costs) as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel, Mr. Michael McLaren.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[7]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.